**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF VERMONT**

USDC - DVT
2:26-cv-342

| | |
|---|---|
| In re:<br>ROMAN CATHOLIC DIOCESE OF BURLINGTON, VERMONT,<br>Debtor. | Chapter 11<br>Case No. 24-10205 (HZC) |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS,<br>Plaintiff,<br>v.<br>ROMAN CATHOLIC DIOCESE OF BURLINGTON, VERMONT, BISHOP JOHN J. MCDERMOTT, et al.,<br>Defendants. | Adv. Proc. No. 26-01005 (HZC) |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OPPOSITION TO THE PARISHES' MOTION TO WITHDRAW THE REFERENCE PURSUANT TO 28 U.S.C. § 157(d)**

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ....................1

II. FACTUAL BACKGROUND ....................2

A. The Bankruptcy Case and the Committee's Standing ....................2

B. The Adversary Proceeding ....................3

C. Dismissal of the Parishes' District Court Action ....................4

D. State Court Actions Against the Parishes That Are Subject to a Sua Sponte Stay ....................5

III. LEGAL ARGUMENT ....................6

A. The Adversary Proceeding Is Not Subject to Mandatory Withdrawal. ....................7

B. The Parishes Have Failed to Establish "Cause" for Permissive Withdrawal ....................10

1. The Committee's Declaratory Relief, Avoidance, and Turnover Claims Are Core Proceedings Under 28 U.S.C. § 157(b)(2). ....................11

2. A Jury Demand Is Insufficient Cause to Withdraw the Reference Before Trial Readiness. ....................13

3. Judicial Efficiency and Economy Support Adjudication by the Bankruptcy Court. ....................14

4. Costs and Unnecessary Delay Support Adjudication by the Bankruptcy Court. ....................15

5. Uniformity of Bankruptcy Administration Supports Adjudication by the Bankruptcy Court. ....................16

6. The Parishes Are Forum Shopping. ....................16

IV. CONCLUSION ....................17

# TABLE OF AUTHORITIES

**Cases**

*AYH Wind Down LLC v. Silberstein (In re All Year Holdings Ltd.)*, 2025 WL 2945695 (S.D.N.Y. Oct. 17, 2025) ....................14, 15

*Daniels v. Elks Club of Hartford*, 2012 VT 55, 192 Vt. 114 ....................6

*Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014) ....................13

*Hatzel & Buehler, Inc. v. Cent. Hudson Gas & Elec. Corp.*, 106 B.R. 367 (D. Del. 1989)....................1

*In re Archbishop of Agaña*, No. 19-00010 (D. Guam) ....................9

*In re Extended Stay, Inc.*, 466 B.R. 188 (S.D.N.Y. 2011) ....................7

*In re Ionosphere Clubs, Inc.*, 922 F.2d 984 (2d Cir. 1990) ....................7

*In re Roman Cath. Archbishop of Portland in Or.*, 335 B.R. 842 (Bankr. D. Or. 2005)....................9

*In re Roman Cath. Bishop of Great Falls*, No. 17-60271 (Bankr. D. Mont.)....................9

*In re Roman Cath. Church of the Archdiocese of Santa Fe*, 621 B.R. 502 (Bankr. D.N.M. 2020) ....................8, 9, 10

*In re Roman Catholic Archbishop of San Francisco*, No. 23-30564 (Bankr. N.D. Cal.) ....................9

*In re Roman Catholic Diocese of Harrisburg*, No. 1:20-bk-00599 (Bankr. M.D. Pa.) ....................9

*Koken v. Reliance Grp. Holdings, Inc. (In re Reliance Grp.)*, 273 B.R. 374 (Bankr. E.D. Pa. 2002) ....................12

*Kraken Investments Ltd. v. Jacobs (In re Salander-O'Reilly Galleries, LLC)*, 475 B.R. 9 (S.D.N.Y. 2012) ....................12

*Listecki v. Off. Comm. of Unsecured Creditors*, 780 F.3d 731 (7th Cir. 2015)....................8, 9, 10

*Meghji v. Compound Labs, Inc. (In re Celsius Network LLC)*, 670 B.R. 379 (S.D.N.Y. 2025) ....................7, 15

*Off. Comm. of Unsecured Creditors v. Cath. Diocese of Wilmington, Inc. (In re Cath. Diocese of Wilmington, Inc.)*, 432 B.R. 135 (Bankr. D. Del. 2010) ....................9

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095 (2d Cir. 1993)....................10, 14, 16

*Rweyemamu v. Cote*, 520 F.3d 198 (2d Cir. 2008) ....................8

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 307 (S.D.N.Y. 2011)........7, 8

*South Street Seaport Limited Partnership v. Burger Boys, Inc. (In re Burger Boys, Inc.)*,
94 F.3d 755 (2d Cir. 1996)....................11

*Stern v. Marshall*, 564 U.S. 462 (2011)....................2, 7, 13, 17

**Statutes**

11 U.S.C. § 541(a)(1)....................2

12 V.S.A. § 5060....................2, 4, 6

28 U.S.C. § 157....................1, 3, 6, 7, 11, 12, 13

28 U.S.C. § 1334....................3

42 U.S.C. § 2000bb-1....................8

The Official Committee of Unsecured Creditors (the "Committee") appointed in the Chapter 11 case of The Roman Catholic Diocese of Burlington, Vermont (the "Diocese" or "Debtor"), *In re Roman Catholic Diocese of Burlington, Vermont*, No. 24-10205 (Bankr. D. Vt.), respectfully opposes the *Motion to Withdraw Adversary Proceeding from Bankruptcy Court for the District of Vermont* ("Withdrawal Motion") filed by Christ the King Parish in Rutland and six other parishes (the "Parishes") pursuant to 28 U.S.C. section 157(d), and states as follows.

## I. PRELIMINARY STATEMENT

This adversary proceeding lies at the very center of the administration of the Debtor's Chapter 11 estate. The Committee, which represents more than 115 survivors of childhood sexual abuse, was granted standing by the Bankruptcy Court to prosecute estate causes of action, including: (i) a declaration that the parishes are operating divisions of the Debtor and that their assets and the assets held in the Parish Trusts are property of the estate; (ii) avoidance and recovery of the actual and constructive fraudulent transfers by which hundreds of millions of dollars in estate property were moved into certain parish trusts; and (iii) turnover of that property to the estate for the benefit of its creditors. *See In re Roman Catholic Diocese of Burlington, Vermont,* 2026 WL 2172610 (Bankr. D. Vt. July 28, 2026) ("Standing Decision"). The adversary proceeding presents core bankruptcy claims that could not exist outside of a bankruptcy case.

The Parishes now ask the District Court to withdraw the reference of the entire adversary proceeding. Their motion should be denied. As the party seeking withdrawal, the Parishes bear the burden of establishing "cause," and 28 U.S.C. § 157(d) "creates a presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court, unless rebutted by a contravening policy." *Hatzel & Buehler, Inc. v. Cent. Hudson Gas & Elec. Corp.*, 106 B.R. 367, 371 (D. Del. 1989). The Parishes cannot carry that burden on any theory.

The Withdrawal Motion also proceeds from a mistaken premise about what this adversary proceeding seeks and improperly merges two very different sets of litigation. The Committee's complaint asks the Bankruptcy Court to determine core bankruptcy issues focused on the scope of the Debtor's estate. It names no parishioner as a defendant, asserts no tort claim, and does not ask any court to impose civil liability on the Parishes or their members, or to close any church. The constitutional concerns that animate the Withdrawal Motion — chiefly, the prospect of personal liability of individual parishioners under 12 V.S.A. § 5060 — arise, if at all, from the separate State Court Actions brought by individual survivors, to which the Committee is not a party and which assert different claims and seek very different relief.

The Parishes have not established cause for either mandatory or permissive withdrawal. The Motion should be denied. The adversary proceeding should remain in the Bankruptcy Court through pretrial proceedings and, if any claim is ultimately determined to be non-core or a *Stern* claim, through the issuance of proposed findings of fact and conclusions of law on any dispositive motions that can then be referred to the District Court.

## II. FACTUAL BACKGROUND

### A. <u>The Bankruptcy Case and the Committee's Standing</u>

In 2024, in the wake of numerous lawsuits brought after Vermont extended the limitations period for civil claims of childhood sexual abuse, the Diocese commenced a voluntary bankruptcy under Chapter 11 of the Bankruptcy Code. Under section 541(a)(1) of the Bankruptcy Code, the commencement of the bankruptcy case created an estate comprising all legal and equitable interests of the Debtor in property, including causes of action such as avoidance claims. Causes of action to recover money or property for the benefit of creditors belong to the estate.

On July 10, 2026, the Committee moved for leave to prosecute estate causes of action on behalf of the bankruptcy estate on the grounds that it made a demand upon the Debtor, which the Debtor refused, and that the Estate Causes of Action are colorable and likely to benefit the estate.

On July 28, 2026, after full briefing and a hearing, the Bankruptcy Court granted the Committee leave, standing, and authority under Sections 105(a), 1103(c), and 1109(b) of the Bankruptcy Code to prosecute the proposed causes of action against the Diocese, the Parishes, and certain other parties. Standing Decision, 2026 WL 2172610 at *1. Applying the Second Circuit's standing framework, the court found that the Committee had made demand on the Debtor, that the claims are colorable, and that the litigation is likely to benefit the estate because the claims "potentially constitute the estate's largest assets." *Id.* at *3.

By its Standing Decision, the court expressly held that it has jurisdiction under 28 U.S.C. §§ 157 and 1334 and that the matter is "a core proceeding" over which "this Court has constitutional authority to enter a final judgment." *Id.* at *1. The Bankruptcy Court also noted that the Vermont Superior Court had already stayed certain survivors' suits and "determined this Court to be the proper forum to resolve the issue of whether the Parishes are distinct from the Debtor," and that resolving these disputes in one bankruptcy forum, rather than through piecemeal litigation, "streamlines such disputes." *Id.* at *3.

**B. <u>The Adversary Proceeding</u>**

On July 31, 2026, the Committee commenced Adversary Proceeding No. 26-01005 against the Diocese, the Parishes, and certain other parties in accordance with the Bankruptcy Court's Standing Decision and order. The adversary complaint asserts six causes of action (collectively, the "<u>Estate Causes of Action</u>"): (1) declaratory relief that the diocesan parishes are not separate legal entities but divisions of the Diocese; (2) declaratory relief that all assets of the diocesan parishes are property of the estate; (3) declaratory relief that parish trusts created by the Diocese

for its own benefit (the "Parish Trusts") are self-settled trusts subject to creditors' claims; (4) avoidance and recovery of intentional fraudulent transfers into the Parish Trusts; (5) avoidance and recovery of constructively fraudulent transfers into the Parish Trusts; and (6) turnover of the assets held in the name of the Parish Trusts. Withdrawal Motion at 9.

The complaint names as defendants the Diocese, the Parishes, two high schools, and the Bishop in his capacity as trustee of the Parish Trusts; it names no individual parishioner. It asserts no tort claim and seeks no determination that any Parish or parishioner is liable for abuse or negligence, no damages from parishioners, and no relief under 12 V.S.A. § 5060. Nor does it ask the Court to sell or dispose of any asset, to close any church or school, or to restrict worship, the sacraments, or any religious activity. The relief sought — declarations fixing the boundaries of the estate, avoidance and recovery of the Diocese's transfers of its own assets into the Parish Trusts, and turnover to the estate — determines only which assets are part of the Debtor's reorganization. The disposition of estate property will be addressed in the bankruptcy.

**C. Dismissal of the Parishes' District Court Action**

On July 21, 2026, in violation of the automatic stay in this bankruptcy case, the Parishes filed a complaint in the United States District Court for the District Court of Vermont against six individual abuse survivors who have sued them, *Christ The King Parish in Rutland, et al. v. P.A. et al.,* case no. 2:26-cv-249. The complaint asserted three counts: violation of the First Amendment right to free association, violation of the right to free exercise, and violation of the church-autonomy doctrine. By their complaint, the Parishes sought (a) a declaration that all civil proceedings against the Parishes — in the state courts and in the bankruptcy court — are unconstitutional under the First Amendment, and (b) an emergency stay of the bankruptcy case pending resolution of those constitutional questions.

On September 1, 2026, following a hearing and over the objections of the Parishes, the Bankruptcy Court granted the Committee's motion to enforce the automatic stay and held that the Parishes' district court complaint was an act to control the Estate Causes of Action under Bankruptcy Code section 362(a)(3) in violation of the automatic stay. Accordingly, the Bankruptcy Court ordered dismissal of the complaint as void,[1] noting that the Parishes' jurisdictional objections should be addressed as a matter of withdrawal of the reference to the adversary proceeding.

**D. State Court Actions Against the Parishes That Are Subject to a *Sua Sponte* Stay**

In 2025, the abuse survivors named as district court defendants in the to be dismissed action sued the Parishes and their alleged trusts in the Vermont Superior Court, Washington Unit (the "State Court Actions") for compensatory and punitive damages based on childhood sexual abuse at the hands of the parish priests. *Cf.* Withdrawal Motion at 2. The Parishes sought dismissal of the State Court Actions for reasons including that the Parishes had no authority over abusive priests and a finding of liability against the Parishes as unincorporated associations would expose parishioners to liability.

On May 29, 2026, the superior court denied dismissal and issued a *sua sponte* stay of all further proceedings. Withdrawal Motion at 2. The Parishes acknowledge that the superior court "expressed concern over potentially overlapping issues with the bankruptcy court as well as significant constitutional questions." *Id.* The superior court observed, "[I]f there is some question as to whether Diocese creditors can reach the assets of the [Parish] Trusts, that presumably is a matter to be resolved in the Diocese's bankruptcy case – not here." Withdrawal Motion at Exhibit B (M.F. Order at 6).

[1] On September 2, 2026, the Parishes filed a Notice of Appeal [Docket No. 883] of the Bankruptcy Court's stay violation order.

The State Court Actions and this adversary proceeding are separate litigation involving different plaintiffs, different claims, and very different relief. In the State Court Actions, individual survivors sought tort damages from the Parishes and it was in that context that the superior court observed, without deciding, that questions of parishioner liability under 12 V.S.A. § 5060 and *Daniels v. Elks Club of Hartford*, 2012 VT 55, 192 Vt. 114, may eventually require attention. The Committee is not a party to the State Court Actions and the Estate Causes of Action assert no comparable claim. The Committee's adversary proceeding seeks no damages from the Parishes' members and no adjudication of tort liability at all. As discussed below, the Withdrawal Motion does not distinguish between the state court proceedings and the adversary and the Parishes attribute to the adversary proceeding constitutional concerns that are not raised in the adversary proceeding.

## III. LEGAL ARGUMENT

Title 28 U.S.C. Section 157(d) governs mandatory withdrawal of the reference and discretionary withdrawal of the reference "for cause shown." 28 U.S.C. §157(d). Section 157(d) provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section… for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

The Parishes, as the parties seeking withdrawal, bear the burden of demonstrating cause. The statute's requirement that cause be shown reflects a presumption that bankruptcy proceedings will be adjudicated in the bankruptcy court unless that presumption is rebutted. As set forth below, the Parishes cannot show grounds for withdrawal under either the mandatory or the permissive prong of section 157(d).

**A. <u>The Adversary Proceeding Is Not Subject to Mandatory Withdrawal.</u>**

Section 157(d) requires withdrawal only where "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." The Second Circuit construes this provision 'narrowly,'" requiring withdrawal "only in cases 'where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding.'" *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 454 B.R. 307, 312 (S.D.N.Y. 2011) (citing *In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 995 (2d Cir. 1990)). "Substantial and material" consideration means "significant interpretation, as opposed to simply application, of federal laws apart from the bankruptcy statutes." *Id.* In *In re Extended Stay, Inc.,* 466 B.R. 188 (S.D.N.Y. 2011), the district court explained that withdrawal of the reference is mandated where issues under non-bankruptcy laws dominate those under the bankruptcy laws. Mandatory withdrawal is therefore appropriate only where a case would require the court "to engage itself in the intricacies" of non-bankruptcy law, not where it calls for the "routine application" or "straightforward application of a federal statute to a particular set of facts," and the "bare contention" that non-bankruptcy law is dispositive will not suffice. *Id.* at 196. *Compare Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 454 B.R. at 312 (issues of first impression under federal securities law, including preemption, satisfied mandatory withdrawal); *Meghji v. Compound Labs, Inc. (In re Celsius Network LLC),* 670 B.R. 379, 388 (S.D.N.Y. 2025) (same; federal securities action involving cryptocurrency raised novel issues of federal securities laws); and *In re Extended Stay, Inc.,* 466 B.R. at 200-03 (mandatory withdrawal not warranted based on objections to court's jurisdictional authority under *Stern v. Marshall*).

The Parishes cannot meet the demanding standard for mandatory withdrawal. Their theory of mandatory withdrawal rests on RFRA (Withdrawal Motion at 17), but RFRA has no application

here. By its plain terms, RFRA provides that "*Government* shall not substantially burden a person's exercise of religion" and authorizes relief only "against a government." 42 U.S.C. §§2000bb-1(a) and (c). The Seventh Circuit, addressing the identical argument in a diocesan bankruptcy, held that "RFRA is not applicable in cases where the government is not a party." *Listecki v. Off. Comm. of Unsecured Creditors,* 780 F.3d 731, 736 (7th Cir. 2015). The court further held that a creditors' committee was not barred by RFRA or the Free Exercise Clause of the First Amendment from prosecuting avoidance and turnover claims against the diocese. *Id.* at 736-41. The *Listecki* court reasoned that the creditors' committee is not a governmental actor, even where it obtained derivative standing by court order, because the committee owes a fiduciary duty to private creditors and "avoiding transfers" is "not the exclusive prerogative of the government." *Id.* at 740. Other courts have reached the same conclusion. *See, e.g., Rweyemamu v. Cote,* 520 F.3d 198, 203 n.2 (2d Cir. 2008) ("[W]e do not understand how [RFRA] can apply to a suit between private parties, regardless of whether the government is capable of enforcing the statute at issue."); *In re Roman Cath. Church of the Archdiocese of Santa Fe,* 621 B.R. 502, 510-11 (Bankr. D.N.M. 2020) (following *Listecki* and granting derivative standing to committee to pursue avoidance claims).

In this case, the Committee is a private fiduciary for the estate's creditors; it is not the government and RFRA does not create a basis for withdrawal. Even if RFRA could theoretically be invoked, it would not *require* the "significant interpretation" that mandatory withdrawal demands. RFRA is a settled statute; applying it to particular facts is the "routine application" that does not compel withdrawal. *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 454 B.R. at 312. More fundamentally, a RFRA defense is at most an affirmative defense – it is not the basis of the adversary proceeding. The Committee's claims turn on neutral principles of bankruptcy law and Vermont law on fraudulent transfers and trusts.

Nor do the Estate Causes of Action present novel issues or matters of first impression. Substantially identical claims — for declarations that diocesan parishes and schools are not separate legal entities and that the assets associated with them are property of the estate, and for avoidance of prepetition transfers of diocesan assets to parishes — have been asserted, litigated, and adjudicated in Catholic diocesan bankruptcies across the country for two decades. *See, e.g., In re Archbishop of Agaña*, No. 19-00010 (D. Guam) (following a summary judgment ruling that the debtor's parishes and schools are unincorporated divisions of the archdiocese, the court presiding over the bankruptcy conducted a trial and determined that the disputed property associated with the parishes and schools were property of the estate); *In re Roman Catholic Diocese of Harrisburg*, No. 1:20-bk-00599 (Bankr. M.D. Pa.) (bankruptcy court opinion permitting the committee to pursue fraudulent transfer claims regarding assets the diocese had transferred into Parish trusts); *Off. Comm. of Unsecured Creditors v. Cath. Diocese of Wilmington, Inc. (In re Cath. Diocese of Wilmington, Inc.)*, 432 B.R. 135 (Bankr. D. Del. 2010) (adjudicating that approximately $120 million in pooled investment funds held for parishes and diocesan affiliates was property of the estate); *In re Roman Cath. Archbishop of Portland in Or.*, 335 B.R. 842, 861-66 (Bankr. D. Or. 2005) (First Amendment does not bar determination of whether property associated with parishes is property of the estate); *In re Roman Cath. Bishop of Great Falls*, No. 17-60271 (Bankr. D. Mont.) (committee prosecution of declaratory judgment and avoidance claims concerning parish properties); *Archdiocese of Santa Fe*, 621 B.R. at 510-11; *Listecki*, 780 F.3d at 736-41. Substantially the same declaratory claims were recently litigated by the committee in *In re Roman Catholic Archbishop of San Francisco*, No. 23-30564 (Bankr. N.D. Cal.), where the committee survived a motion to dismiss and had a dispositive motion for summary judgment pending when the parties announced an agreement on a consensual plan.

Courts have resolved these recurring disputes by applying settled principles of bankruptcy, fraudulent conveyance, trust, and property law, not through the "significant interpretation" of RFRA or any other federal statute that mandatory withdrawal requires. The observations regarding possible constitutional issues of the Vermont Superior Court on which the Parishes rely were directed to the tort claims asserted against the Parishes in the State Court Actions. The Committee has asserted no such claims.

A court can resolve whether the Parishes are operating divisions of the Diocese, whether Parish Trusts are property of the estate, and whether transfers were avoidable without interpreting RFRA at all. As courts have recognized, the Bankruptcy Code's fraudulent transfer provisions are neutral laws of general applicability that apply to every debtor alike — not a federal question whose significant interpretation is necessary to resolve the proceeding. *Santa Fe,* 621 B.R. at 510 ("The Bankruptcy Code's fraudulent transfer sections are neutral and of general applicability, so it may be difficult to challenge them as violating the Free Exercise Clause of the First Amendment."); *Listecki,* 780 F.3d at 734 ("The [Bankruptcy] Code and its relevant provisions are generally and neutrally applicable and represent a compelling governmental interest in protecting creditors that is narrowly tailored to achieve that end."). To the extent that the Parishes may raise contested affirmative defenses under RFRA or the First Amendment, the defenses will not predominate over the core bankruptcy claims. The Parishes' affirmative defenses, constitutional or otherwise, are best litigated where every other aspect of the estate is being administered. For these reasons, mandatory withdrawal is unwarranted.

**B. <u>The Parishes Have Failed to Establish "Cause" for Permissive Withdrawal</u>**

The Parishes cannot establish cause for permissive withdrawal. Section 157(d) does not define "cause," but the Second Circuit in *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),* 4 F.3d 1095, 1101 (2d Cir. 1993) directs a district court to first consider

whether the claim is core or non-core (including the existence of a jury demand), and then weigh questions of judicial efficiency and economy, delay and costs to the parties, uniformity of bankruptcy administration, and prevention of forum shopping.[2] *See also South Street Seaport Limited Partnership v. Burger Boys, Inc. (In re Burger Boys, Inc.)*, 94 F.3d 755, 762 (2d Cir. 1996).

Each of the *Orion* factors supports retention of the adversary proceeding by the Bankruptcy Court that is already immersed in the case. The Parishes' First Amendment defenses do not convert core claims into non-core ones or require an Article III forum at the pretrial stage. A jury demand, assuming one is made by the Parishes, is insufficient cause for withdrawal before the proceeding is trial-ready. And judicial economy, cost considerations, uniformity of bankruptcy administration, and the prevention of forum shopping each support denial of the Withdrawal Motion.

### 1. The Committee's Declaratory Relief, Avoidance, and Turnover Claims Are Core Proceedings Under 28 U.S.C. § 157(b)(2).

Under 28 U.S.C. § 157(b)(1), the Bankruptcy Court may "hear and determine" and "enter appropriate orders and judgments" in all "core proceedings arising under title 11, or arising in a case under title 11" that are referred by the District Court.

The Committee's Estate Causes of Action fall squarely within the non-exclusive list of core proceedings in § 157(b)(2). Indeed, the Parishes concede that the avoidance and turnover claims "are listed as core under the statute." Withdrawal Motion at 27. The avoidance claims are "proceedings to determine, avoid, or recover fraudulent conveyances" under subsection (H); the turnover claim is an "order[] to turn over property of the estate" under subsection (E); and all of the Estate Causes of Action — including the declaratory relief claims fixing the boundaries of the estate — are "matters concerning the administration of the estate" under subsection (A) and "proceedings affecting the liquidation of the assets of the estate" under subsection (O).

[2] The Parishes truncate the *Orion* factors by citing "economy, efficiency, and uniformity" as the third factor and omitting both the delay and costs to the parties and the prevention of forum shopping.

The declaratory relief claims are core because they address the crux of the bankruptcy case: what entities constitutes the Debtor and what assets constitute property of the estate subject to creditor claims. As explained in *Kraken Investments Ltd. v. Jacobs (In re Salander-O'Reilly Galleries, LLC),* 475 B.R. 9, 29 (S.D.N.Y. 2012), "the determination of what constitutes the bankruptcy estate is a core proceeding, at least in this case and probably in most, if not all, cases. A bankruptcy estate is a construct of Section 541, and thus a proceeding to determine the bounds of the estate 'arises under' Title 11." Such claims have no existence outside of a bankruptcy court. *Id.*, *see also Koken v. Reliance Grp. Holdings, Inc. et al. (In re Reliance Grp.),* 273 B.R. 374, 394-5 (Bankr. E.D. Pa. 2002) (denying remand to state court; matters requiring a declaration of whether property comes within the definition of property of the estate are core proceedings).

The Parishes argue that the Estate Causes of Action involve application of state law so they should be treated as non-core. Withdrawal Motion at 23. The argument is meritless under the plain terms of the statute. First, the matter is subject to determination by the Bankruptcy Court under section 157(b)(3) ("The bankruptcy judge shall determine… whether a proceeding is a core proceeding.") and the Bankruptcy Court determined that the Committee's standing to bring the Estate Causes of Action is a core proceeding. Standing Decision, 2026 WL 2172610 at *1. Second, section 157(b)(3) expressly provides that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." That provision reflects "Congress' intent that bankruptcy courts are not precluded from adjudicating state-law claims when such claims are at the heart of the administration of the bankrupt estate." *In re Salander-O'Reilly Galleries, LLC,* 475 B.R. at 27. The question whether the parishes are operating divisions of the Debtor, and whether the Parish Trusts hold property of the estate, is precisely such a question — it defines the res that the estate will administer and distribute to abuse survivors and other creditors.

The Parishes invoke *Stern v. Marshall* to argue that the Bankruptcy Court lacks constitutional authority over them. *Stern* does no such work here. The Supreme Court held only that a bankruptcy court lacks constitutional authority to enter final judgment on a narrow category of state law counterclaims not resolved by the proof of claim process. *Stern v. Marshall,* 564 U.S. 462, 503 (2011). In *Executive Benefits Ins. Agency v. Arkison,* 573 U.S. 25, 33-34 (2014), a unanimous Supreme Court confirmed that "proceedings to determine, avoid, or recover fraudulent conveyances" are statutorily core under § 157(b)(2)(H), and that the statute authorizes bankruptcy judges to "hear and determine" and "enter appropriate orders and judgments" on core claims. The Court further confirmed that the bankruptcy court can adjudicate non-core so-called *Stern* claims that are otherwise related to a case under title 11 by issuing proposed findings of fact and conclusions of law to the district court for *de novo* review. In *Executive Benefits Ins. Agency,* the Supreme Court explained:

> Put simply: If a matter is core, the statute empowers the bankruptcy judge to enter final judgment on the claim, subject to appellate review by the district court. If a matter is non-core, and the parties have not consented to final adjudication by the bankruptcy court, the bankruptcy judge must propose findings of fact and conclusions of law. Then, the district court must review the proceeding *de novo* and enter final judgment.

*Id.* at 34.

Here, the Parishes' refusal to consent to judgment by the Bankruptcy Court does not support withdrawal and, if the proceeding is found to be non-core, even then merely requires that the Bankruptcy Court issue findings of fact and conclusions subject to review by the district court.

**2. <u>A Jury Demand Is Insufficient Cause to Withdraw the Reference Before Trial Readiness.</u>**

Likewise, the Parishes' announced intention to demand a jury trial does not supply cause for immediate withdrawal. Under *Orion*, even where a case is non-core and a jury demand has been filed, a district court "might decide that a case is unlikely to reach trial, that it will require protracted

discovery and court oversight before trial, or that the jury demand is without merit, and therefore might conclude that the case at that time is best left in the bankruptcy court." *In re Orion Pictures Corp.,* 4 F.3d at 1102. Consistent with that rule, courts in this Circuit hold that a jury right, "combined with a finding that the claim cannot be finally adjudicated by a bankruptcy court, may require the Court to withdraw the reference" only where "the case is ready to proceed to trial," and that a defendant remains free to move for withdrawal again if and when the case later proceeds to trial. *AYH Wind Down LLC v. Silberstein (In re All Year Holdings Ltd.),* 2025 WL 2945695, *5 (S.D.N.Y. Oct. 17, 2025) (cited by the Parishes; post-confirmation litigation withdrawn after two years of pretrial proceedings before the bankruptcy court).

The adversary proceeding in this case is nowhere near trial. No answer has been filed, discovery has not begun, and the threshold estate-property and avoidance issues remain to be litigated. The Court entered an order confirming that the Parishes are mediation parties and mediation is proceeding, which, hopefully, will result in an overall resolution of the bankruptcy case. Keeping the proceeding in the Bankruptcy Court for pretrial and dispositive-motion practice serves efficiency and uniformity, and the Parishes may raise their jury demand if and when this matter becomes trial-ready.

**3. <u>Judicial Efficiency and Economy Support Adjudication by the Bankruptcy Court.</u>**

The remaining *Orion* factors, including judicial efficiency and economy, support adjudication of the adversary proceeding by the Bankruptcy Court.

The Bankruptcy Court granted the Committee's standing motion after briefing and argument and is intimately familiar with the parties, the Parish Trusts, and the disputed estate property. Standing Decision, 2026 WL 2172610 at *1. The adversary proceeding involves the Diocese, the Bishop as trustee of the Parish Trusts, more than sixty diocesan parishes, and certain related high schools, and its outcome will define the assets available to abuse survivors and shape any global

settlement in the bankruptcy. *Id.* at *3. Moreover, the Bankruptcy Court is best suited to evaluate the corporate and financial relationship between the Diocese and the defendants and to make the core legal determinations as to estate property.

The Parishes' reliance on *In re Celsius Network LLC* and *In re All Year Holdings Ltd.* is misplaced. Withdrawal Motion at 23-25. *Celsius* granted mandatory withdrawal because the claims turned on matters of first impression under the Securities Act – the opposite of the Committee's core avoidance and turnover claims. *In re Celsius Network LLC,* 670 B.R. at 389. And *All Year Holdings Ltd.* granted withdrawal only because the case was ready to proceed to trial and the parties agreed that after almost two years the bankruptcy court had "exhausted the limits of the pretrial proceedings that it is authorized to oversee." *In re All Year Holdings Ltd.,* 2025 WL 2945695 at *3. The court reaffirmed that withdrawal is premature before trial-readiness. *Id.* at *5. Unlike the novel securities law questions presented in *Celsius*, moreover, the Estate Causes of Action raise estate property and avoidance issues of the kind bankruptcy courts have adjudicated in diocesan reorganizations for two decades. *See supra* Part III.A. Both decisions confirm that the reference of the adversary proceeding should not be withdrawn now.

**4. Costs and Unnecessary Delay Support Adjudication by the Bankruptcy Court.**

Costs and unnecessary delay associated with a withdrawal of the reference at this stage also support adjudication of the adversary proceeding by the Bankruptcy Court. Again, the Bankruptcy Court has greater familiarity with the parties, their operations, and the Estate Causes of Action. A delay of the adversary proceeding will potentially delay mediation, a global resolution and then a disclosure statement and reorganization plan being put before the creditors and the Court for confirmation proceedings.

**5. <u>Uniformity of Bankruptcy Administration Supports Adjudication by the Bankruptcy Court.</u>**

Uniformity of bankruptcy administration, another *Orion* factor, also supports adjudication of the adversary proceeding by the Bankruptcy Court.

The Vermont Superior Court has already stayed the individual survivors' suits and identified the Bankruptcy Court as "the proper forum to resolve the issue of whether the Parishes are distinct from the Debtor." Standing Decision, 2026 WL 2172610 at *3. Concentrating these interrelated estate-property and avoidance disputes in the court that administers the estate promotes uniformity in bankruptcy administration and avoids the confusion and expense of piecemeal litigation that the Bankruptcy Court sought to avoid. *Id.* ("Not only is it likely the piecemeal litigation of a handful of survivors against certain parishes, whether in State Court or in Federal District Court would constitute a greater expense, it also poses a textbook example of how the bankruptcy process streamlines such disputes."). Further, the Parishes are not the only defendants in the bankruptcy, but they are the only ones that are seeking withdrawal.

**6. <u>The Parishes Are Forum Shopping.</u>**

Finally, when considering discretionary withdrawal of the reference, *Orion* directs the court to weigh the issue of "prevention of forum shopping." *In re Orion Pictures Corp.,* 4 F.3d at 1102.

The Parishes are forum shopping. The Parishes' effort to move this core dispute over estate property into the District Court — and their declaratory judgment action seeking to have the District Court declare the adversary proceeding itself unconstitutional — is the very forum shopping the "cause" standard is designed to prevent. Allowing the Bankruptcy Court to retain the matter discourages forum shopping; withdrawing the reference would encourage it.

## IV. CONCLUSION

For the foregoing reasons, the Committee respectfully requests that the Court deny the Withdrawal Motion. The Parishes have not established grounds for mandatory or permissive withdrawal of the bankruptcy reference. To the extent any Estate Cause of Action is ultimately determined to be non-core or a *Stern* claim, which the Committee disputes, the Committee requests that the proceeding remain in the Bankruptcy Court through the issuance of proposed findings of fact and conclusions of law on any dispositive motions. Any consideration of withdrawing the reference should be deferred through all pretrial proceedings and until the matter is ripe for trial.

Dated: September 9, 2026

Respectfully submitted,

LEMERY GREISLER LLC

/s/Paul A. Levine, Esq.
Paul A. Levine, Esq.
Local Counsel to the Official Committee of Unsecured Creditors
677 Broadway – 8th Floor
Albany, New York 12207
(518) 433-8800
Email: plevine@lemerygreisler.com

– and –

PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang (Admitted Pro Hac Vice)
Brittany M. Michael (Admitted Pro Hac Vice)
Gail S. Greenwood (Admitted Pro Hac Vice)
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Email: jstang@pszjlaw.com
bmichael@pszjlaw.com
ggreenwood@pszjlaw.com

Counsel to the Official Committee of Unsecured Creditors

UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

---------------------------------------------------------------

In re:

ROMAN CATHOLIC DIOCESE OF BURLINGTON VERMONT,

Debtor.

**Case No. 24-10205**
**Chapter 11**

---------------------------------------------------------------

**CERTIFICATE OF SERVICE**

I hereby certify that on **September 9, 2026**, I electronically filed the **The Official Committee of Unsecured Creditors' Opposition to the Parishes' Motion to Withdraw the Reference Pursuant to 28 U.S.C. §157(d)** with the Clerk of Bankruptcy Court using CM/ECF system which sent notification of such filings to all ECF participants.

Dated: September 9, 2026

/s/Patricia Hartl
Patricia Hartl